IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Case No.: 1:22-cv-02588-SDG-JEM

KATHY MACAAJOUX[1],

   PLAINTIFF,

    V.

HEALTHCARE REVENUE
RECOVERY GROUP D/B/A
ACCOUNT RESOLUTION
SERVICES,[2]

   DEFENDANT.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

COMES NOW Defendant Healthcare Revenue Recovery Group d/b/a ARS Account Resolution Services ("ARS") by and through its undersigned counsel, and files its Motion for Summary Judgment with Brief in Support and Statement of Undisputed Material Facts, pursuant to Rule 56 of the Federal Rules of Civil

---

[1] The correct last name of Plaintiff *pro se* is Macajoux.
[2] The correct name of Defendant is Healthcare Revenue Recovery Group d/b/a ARS Account Resolution Services.

Procedure and Rule 56.1 of the Local Rules for the Northern District of Georgia and states as follows:

## I. INTRODUCTION

Plaintiff *pro se*, Kathy Macajoux ("Plaintiff") instituted the above-styled action alleging that ARS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692, *et seq.*, specifically Section 1692e(2) and Section 1692e(8) by "reporting to a third party (consumer reporting agencies) false information when it knew from its records the true open date and that certain trade lines furnished are false" **[ECF 1, ¶ 18]**.

ARS denies all liability and damages as to Plaintiff's claims under the FDCPA and asserts it is entitled to summary judgment as there is no genuine issue of material fact that ARS did not violate the FDCPA. It is undisputed that ARS did not report false information to any Consumer Reporting Agency ("CRA") and that no information about any of the seven (7) collections reported by ARS is false. The evidence is undisputed that ARS sent a letter to Plaintiff dated June 22, 2021, listing all seven (7) medical debt accounts ("Collections") owed by Plaintiff to Inphynet South Broward, LLC ("Inphynet") with the dates of service and the balances due.[3]

---

[3] To the extent Plaintiff claims any FDCPA violation related to June 2021 Letter, such claim would not be actionable as the alleged conduct took place more than one

The undisputed record further demonstrates that ARS reported the Collections to the CRA with the accurate "open date" and balance due. Finally, in this case, the Experian reports produced by Plaintiff demonstrate that the "open" date and "removal" date for each of the Collections is unchanged and accurate.

## II. LEGAL ARGUMENT

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 US 574, 585 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party,

---

year before Plaintiff filed this action on June 29, 2022 and after the FDCPA's one-year statute of limitations had expired. 15 U.S.C. §1692k(d).

Anderson v. Liberty Lobby, Inc., 477 US 242, 255 (1986), he "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 US at 586.

The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings but instead must come forward with "specific facts showing that there is a *genuine issue for trial*." Matsushita, 475 US at 587 (*citing,* Fed. R. Civ. P. 56(e)); Shepp v. Custom Cartage, Inc., No. 1:20-cv-02722-VMC, 2022 US Dist. LEXIS 94137, *8-9 (ND Ga., May 25, 2022). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

Additionally, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 US 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contracted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

4

When the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine dispute for trial. Shepp, 2022 US Dist. LEXIS 94137 at *9 (*citing* Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)(all reasonable doubts should be resolved in favor of the non-movant)). If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. Celotex, 477 U.S. at 323; *see also,* EPL, Inc. v. USA Fed. Credit Union, 173 F.3d 1356, 1362 (11th Cir. 1999); Duke v. Cleland, 884 F. Supp. 511, 514 (N.D. Ga. 1995).

**B. No Violation of FDCPA Section 1692e by ARS**

Section 1692e of the FDCPA provides in part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
. . .
(2) The false representation of-

   (A) the character, amount, or legal status of any debt;
. . .
(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
15 U.S.C. §§ 1692e(2) & 1692e(8).

The undisputed evidence demonstrates that ARS neither falsely represented the character, amount, or legal status of any debt nor communicated or threatened to communicate to any person credit information that it knew or should have known was false. To prevail on a claim under the FDCPA, a plaintiff must demonstrate that (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector under the Act; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. Smith v. Nat'l Credit Sys., Inc., No. 1:13-CV-4219-WSD-WEJ, 2014 US Dist. LEXIS 67699, *6 (ND Ga., Mar. 7, 2014) (*citing,* Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1363 (ND Ga. 2011)). Here, the only element at issue is the third: whether ARS engaged in an act or omission prohibited by the FDCPA.

Plaintiff's allegations appear to claim that the same conduct by ARS violated both Section 1692e(2) and Section 1692e(8) as Plaintiff does not distinguish conduct that allegedly violated 1692e(2) from conduct that allegedly violated 1692e(8): reporting to CRAs false information that ARS knew was false, specifically the "true open date" of a debt and "false" tradelines. **[ECF 1, ¶18]**.

1. **Section 1692e(2)**

On the Section 1692e(2) claim, the Court in Carlisle v. Nat's Commer. Servs., NO. 1:14-CV-515-TWT-LTW, 2017 US Dist. LEXIS 39954, *17-18 (N.D. Ga.,

Feb. 22, 2017) found it plausible that NCS had reported that the Plaintiff owed different amounts over time, which satisfies the prohibition in Section 1692e(2) against a false representation of the "amount" of any debt. The evidence here shows that ARS reported all the exact amounts to the CRAs in November 2020, August 2021, and July 2022, as Plaintiff's own credit reports show, and that the original creditor, Inphynet, verified those amounts. **[ARS' Statement of Undisputed Material Facts ("SUMF"), ¶¶ 6, 7, 8, 17]**

In Tucker v. Procollect, Inc., No. 1:18-CV-4063-MHC-AJB, 2020 US Dist. LEXIS 262577, *12-13 (ND Ga., Feb. 6, 2020), this Court granted the defendant's motion for summary judgment on the Plaintiff's Section 1692e(2)(A) claim, finding no evidence of the Plaintiff's allegations of false representation, "only the Plaintiff's disagreement about whether ProCollect properly validated the alleged debt." Here, not only is there no evidence of false representation since the uncontroverted record demonstrates that ARS accurately reported all data regarding each of Plaintiff's Collections, including the amounts, there is no evidence that ARS did not correctly validate each Collection account.

Plaintiff admitted in her deposition testimony that as the original creditor, Inphynet would know the correct amounts due for the medical services and would possess more accurate information as to the account balances than Experian. Thus,

7

the original creditor has the best knowledge because it knows precisely how much is owed **[SUMF, ¶ 14, 15, 16].** Plaintiff also admitted that Inphynet verified the amounts due that ARS listed in its June 22, 2021 Letter **[SUMF, ¶ 17].** Moreover, the records produced by Plaintiff in discovery, including documents dated August 9, 2021, and July 15, 2022, along with Experian reports listings the same amount, with an open date and removal date for each of Plaintiff's Collections **[SUMF, ¶¶ 10-11].** As such, all the data reported by ARS about Plaintiff's Collections, including the amounts, were accurate.

Considering the undisputed facts and all reasonable inferences therefrom in the light most favorable to Plaintiff, her version of the facts is blatantly contradicted by the record evidence, including the documents she produced. Therefore, this Court should not adopt it in considering this Motion. *See* Tucker, 2020 US Dist. LEXIS 262577 at *6. As there is no evidence in the undisputed record that ARS falsely represented the character, amount, or legal status of any of Plaintiff's Collections, ARS is entitled to judgment in its favor as a matter of law on Plaintiff's Section 1692e(2) claim.

**2. Section 1692e(8)**

Secondly, there is no evidence in the record that ARS violated Section 1692e(8) of the FDCPA. In King v. Nat'l Credit Sys., No. 1:17-CV-03788-ELR,

2019 US Dist. LEXIS 50115 (ND Ga., Jan. 28, 2019), this Court sustained the defendant's objections to and rejected the Magistrate Judge's Report and Recommendation to grant the Plaintiff's motion for partial summary judgment on Section 1692e(8). The Court noted that the Plaintiff claimed that NCS failed to communicate with Equifax, not Credit Karma, and did not claim that NCS had a duty to report to Credit Karma. King, 209 US Dist. LEXIS 50155 at *8 (emphasis added). The Court also found no evidence that Credit Karma relied on information from Equifax and that it was plausible that Credit Karma falsely reported the information *even if* it received correctly reported information from NCS. Id, *8-9 (emphasis added). Here, Plaintiff has presented no evidence that any information about her Collections that ARS reported to any CRA was incorrect or false.

Instead, Plaintiff's allegations outlined in Paragraph 12 of the Complaint demonstrate her complete lack of understanding of the terms "service date," which is the date of the medical services rendered and is not listed on her credit reports, and "open date," which is the date the original creditor transfers an account to a debt collector and is listed on her credit reports. **[ECF ¶12; SUMF, ¶¶ 26, 28, 29, 30, 31].** While Plaintiff alleges that ARS reported "service dates" on seven (7) tradelines incorrectly, the dates on Plaintiff's credit reports are not "service" dates but "open" dates. **[ECF 1, ¶12; SUMF, ¶¶ 7, 8, 10]** Plaintiff's assertion that ARS "reported

false and different open/defaulted dates" demonstrates her additional misunderstanding about the "open" date the "defaulted" date being the same, which they are not. **[SUMF, ¶¶28-31]**

Plaintiff's confusion that "service date," "open date," and "defaulted date" are interchangeable terms does not support her claimed violation of the FDCPA by ARS as her own mistaken belief does not prove that any of the data reported by ARS to any CRA about the Collections was false or inaccurate. Moreover, Plaintiff's misunderstanding of the term "open date" as to the subject Collections on the Experian reports does not serve to support her misguided allegations that ARS violated the FDCPA as the record lacks any evidence that ARS falsely reported any data concerning Plaintiff's Collections. Despite Plaintiff's misconceived notion that the open dates purportedly "re-aged" her Collections, the undisputed facts demonstrate that each of the unchanged open dates on each of Plaintiff's Collections was accurately reported by ARS, and none of her Collections were "re-aged."

Furthermore, Plaintiff's deposition testimony effectively refutes her allegations. Plaintiff testified that on the rental application denial letter dated March 22, 2022, none of the four (4) reasons for the denial had anything to do with ARS. **[SUMF, ¶ 12].** Plaintiff also admitted that it would not be ARS' fault if ARS accurately conveyed information about her Collections to any CRA. Still, an

Experian representative gave her the wrong information during a telephone conversation. **[SUMF, ¶ 17].** The record is devoid of any evidence demonstrating any wrongdoing by ARS.

As a result, in this case, the undisputed record shows that Plaintiff's conclusory allegations without supporting facts fail to raise a genuine issue of material fact that ARS did not violate any provision of FDCPA Section 1692e.

### C. No Article III Standing

Finally, the Court should dismiss this action against ARS for lack of subject-matter jurisdiction as Plaintiff has not established damages sufficient to confer Article III Standing. Although Plaintiff alleges in her Complaint that the "inaccurate and incomplete information has severely damaged the personal and credit reputation of Ms. Macajoux and caused severe humiliation, emotional distress, mental anguish, and lower FICO Scores" **[ECF, ¶ 15]**. Yet, Plaintiff's deposition testimony contradicts these allegations.

Plaintiff's deposition transcript is devoid of any mention of damage to her "personal and credit reputation," "severe humiliation," or "mental anguish," and Plaintiff specifically testified that she is *not asserting* a claim for "emotional distress" damages in this case **[SUMF, ¶ 22]**. Moreover, Plaintiff admitted that she is not claiming damages for out-of-pocket expenses and that she has not incurred

11

any actual damages for amounts paid, amounts lost or out-of-pocket expenses **[SUMF, ¶¶ 20, 21].**

Regarding her credit score, Plaintiff presented no evidence that any action or inaction by ARS caused her to have a "lower FICO Score." While Plaintiff generally testified to her opinion that her credit score was "low," she admitted that on a rental application denial letter dated March 22, 2022, none of the four (4) reasons given for the denial had anything to do with ARS **[SUMF, ¶ 12].** Given her lack of experience with credit scoring systems and how they interpret variables from credit reports, it is not surprising that Plaintiff has not and cannot present any evidence of the impact any particular item on her credit report would have on her FICO credit scores. As such, her contention about the effect on her FICO scores of anything on her credit reports is nothing more than speculation. **[SUMF, ¶ 34]** . The Eleventh Circuit in its recent *en banc* option in Hunstein, stated "We will not imagine or piece together an injury sufficient to give a plaintiff standing when it has demonstrated none, and we are powerless to create jurisdiction by embellishing a deficient allegation of injury." Hunstein v. Preferred Collection Management Services, 48 F.4th 1236, 1247-8 (11th Cir. 2022) (*citing,* Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 925 (11th Cir. 2020)).

Considering all the evidence, Plaintiff has not and cannot show that she has suffered an "injury-in-fact" resulting from ARS' conduct, and thus, she has no standing to sue ARS for the FDCPA damages she seeks in this action. In recent years, the United States Supreme Court has issued opinions addressing Article III standing in the context of federal consumer protection statutes.

In 2016 the Supreme Court decided in Spokeo, Inc. v. Robins, 578 US 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) that to satisfy Article III standing in an FCRA case, a plaintiff must allege an injury-in-fact that is both concrete and particularized. Earlier this year, in TransUnion v Ramirez, __US __, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021), the Supreme Court confirmed its long-standing doctrine that Article III standing requires a plaintiff to show a concrete, particularized, actual harm or an imminent risk of harm that demonstrates the Plaintiff's personal stake in the case. Ramirez, 141 S. Ct. at 2203 (*citing* Raines v. Byrd, 521 US 811, 819 (1997)); *and* Lujan v Defenders of Wildlife, 504 US 555, 560-561 (1992) (To establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief)). As stated by the Supreme Court: "To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question, 'What's it to you?'".

Ramirez, 141 S. Ct. at 2200 (*citing* Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk UL Rev. 881, 882 (1983)).

First, Plaintiff must show she suffered **a concrete harm**. "No concrete harm, no standing." Ramirez, 141 S. Ct. at 2200. Of the three Lujan elements of standing, injury-in-fact is "foremost." Spokeo, 136 S. Ct. at 1547 (*quoting*, Steel Co. v. Citizens for a Better Env't, 523 US 83, 103 (1998)); Trichell v Midland Credit Mgmt., 964 F. 3d 990, 996 (11th Cir. 2020) (FDCPA case). "To establish standing, an injury must be concrete." Spokeo, 136 S. Ct. at 1548. And, "a "concrete" injury must be "de facto"; that is, it must actually exist,' as opposed to being hypothetical or speculative." Id.

The Supreme Court has recognized the distinction between tangible and intangible injuries in the context of determining concreteness and found that intangible injuries can be concrete for purposes of standing. Spokeo, 136. S. Ct. at 1549. Noting that Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," the Supreme Court stated that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Spokeo, 136 S. Ct. at 1550 (*citing* Lujan, 504 U. S. at 578). While the alleged violation of a statutory right (the FDCPA in this action) would fall into the category of intangible injury, "Congress' role in

14

identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right . . .." Spokeo, 136 S. Ct. at 1549.

Therefore, although Plaintiff's claimed violation of the FDCPA by ARS would fall into the "intangible harm" category, it does not automatically confer standing. Injury in fact, is a constitutional requirement, and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Spokeo, 136 S. Ct. at 1547-1548 (*citing* Raines, 521 US at 820). The Eleventh Circuit has held that "Article III standing requires a concrete injury even in the context of a statutory violation." Salcedo v. Hanna, 936 F.3d 1162, 1167 (11th Cir. 2019) (*quoting,* Spokeo, 136 S. Ct. at 1549) (a plaintiff cannot allege a "bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). Instead, the "requirement of injury in fact, is a hard floor of Article III jurisdiction that cannot be removed by statute." Summers v. Earth Island Inst., 555 US 488, 497 (2009). Not only has Plaintiff failed to allege a concrete injury, but she has also failed to demonstrate one.

Second, Plaintiff must show she suffered a **particularized** harm. "For an injury to be particularized, it "must affect the plaintiff in a personal and individual

15

way." <u>Spokeo</u>, 136 S. Ct. at 1548 (*quoting,* <u>Lujan</u>, 504 US at 560, n. 1). Standing requires that the plaintiff "personally has suffered in some actual or threatened way." <u>Spokeo</u>, 136 S. Ct. at 1548 (*quoting,* <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 US 464, 472 (1982)). The Supreme Court has been "careful to emphasize that concreteness and particularization are separate requirements." Ramirez, 141 S. Ct. at 2207, n. 2 (citing, Spokeo, 578 U.S. at 339-340). "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing"). <u>Spokeo</u>, 136 S. Ct. at 1549 (*citing,* <u>Lujan,</u> 504 US at 572). With a claim of a violation yielding only statutory damages and no evidence of any injury to her, Plaintiff has no personal stake in this case and no standing.

Third, Plaintiff must show an **actual** harm or an **imminent risk** of harm by the alleged violation of the FDCPA by ARS. As articulated by the Supreme Court, "… not all inaccuracies cause harm or present any material risk of harm." <u>Spokeo</u>, 136 S. Ct. at 1550. The crux of this action is one unsupported claim by Plaintiff about allegedly "false information" reported by ARS on her credit reports; however, the existence of such allegedly "false" information has no evidentiary support, and it is not sufficient to establish actual harm or an imminent risk of harm to Plaintiff.

16

The Complaint contains no allegation of an "actual," "concrete," and "particularized" harm to Plaintiff or an "imminent risk of harm" resulting from any purported misconduct of ARS. Although Plaintiff alleges violations of two subsections of FDCPA Section 1692e by ARS, the facts developed through discovery demonstrate that there is no evidence to support her claim that ARS used any false, deceptive or misleading representation or means in connection with the collection of any debt, or in particular falsely represented the character, amount or legal status or any debt, or communicated to any person credit information which ARS knew or should have known was false.

Certainly, the Eleventh Circuit has found instances when violations have resulted in sufficient harm to confer Article III standing, as noted in Trichell: an FCRA claim involving "**consequential harms such as a reduced credit score**" is actionable. Trichell, 964 F. 3d at 997 (*citing,* Pedro v. Equifax, Inc., 868 F.3d 1275, 1279-80 (11th Cir. 2017) (emphasis added)). And the Supreme Court held in Ramirez that the class members whose credit reports **were disseminated to third parties suffered a concrete harm** and had standing. Ramirez, 141 S. Ct. at 2212-2213. However, the Supreme Court has clarified that a "bare procedural violation" of a statute does not satisfy the foremost element of Article III standing without proof of a "concrete harm." Spokeo, 136 S. Ct. at 1549- 1550.

17

The existence of allegedly false information on Plaintiff's credit report alone, with no other "downstream" consequential impact, is not an injury-in-fact and does not confer Article III standing. <u>Trichell</u>, 964 F. 3d at 1004 (As several other courts have recognized, an asserted informational injury that causes no adverse effects cannot satisfy Article III).

<u>Ramirez</u> is also instructive on the alleged "material risk of future harm" even though Plaintiff has neither alleged nor demonstrated such harm in this case or sought injunctive relief. The Supreme Court discussed its recognition of this potential harm in <u>Spokeo</u>, where it found that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." <u>Ramirez</u>, 141 S. Ct. at 2210 (*citing,* <u>Clapper v. Amnesty Int'l USA</u>, 568 US 398, 414 (2013)). The Supreme Court ultimately noted TransUnion's persuasive argument that the "mere risk of future harm, standing alone, cannot qualify as a concrete harm." <u>Ramirez</u>, 141 S. Ct. at 2211.

With no allegation or evidence of actual present harm in the form of credit denials, unfavorable credit terms, adverse credit decisions, or material risk of future harm, Plaintiff fails to establish the foremost element of Article III standing (injury-

in-fact) set forth by the Supreme Court in <u>Lujan.</u> Plaintiff cannot establish the second or third element (causal connection to ARS conduct and redress by judicial relief).

Accordingly, this Court should dismiss this action for lack of subject-matter jurisdiction.

### III.    CONCLUSION

ARS has established entitlement to summary judgment based on the complete absence of any evidence creating a genuine dispute regarding any material fact. ARS did not report any false information regarding Plaintiff's Collections and thus did not violate any provision of FDCPA Section 1692e.

WHEREFORE, Defendant Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services respectfully requests the Court GRANT its Motion and enter judgment in its favor on all claims alleged against ARS in Plaintiff's Complaint and any other relief the Court deems just and proper.

### **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D**

Pursuant to Local Rule 7.1D, the undersigned counsel certifies that this document has been prepared using Times New Roman 14-point font.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on **January 26, 2023,** via the Court Clerk's CM/ECF system and served to Plaintiff by USPS regular mail to Kathy Macajoux at 8363 Blackfoot Trail, Jonesboro, Georgia 30236, and by electronic transmission to Lundykathy63@gmail.com *(Plaintiff pro se)*.

Respectfully submitted,

*/s/ Ernest H. Kohlmyer, III*
Ernest H. Kohlmyer, III
Georgia Bar No: 427760
SKohlmyer@Shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, PA.
2300 Maitland Center Pkwy, Suite 100
Maitland, Florida 32751
Phone: 407-622-1772;
Fax: 407-622-1884
*Attorneys for Defendant Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services*