Exhibit "H"

KATHY MACAJOUX,

    Plaintiff,

vs.                                  CASE NO.: 1:22-cv-02588-SDG-JEM

HEALTHCARE REVENUE
RECOVERY GROUP, D/B/A
ACCOUNT RESOLUTION SERVICES

    Defendant.

## **DECLARATION OF JOHN ULZHEIMER**

I, John Ulzheimer, state under penalties of perjury:

1. I am over the age of eighteen, of sound body and mind, and competent to testify to the matters contained herein.

2. I have been retained by Defendant, ARS Account Resolution Services ("ARS"), as an expert in this matter as it relates to, generally, Metro 2, credit damages, credit reporting, credit scoring, and the practice formally referred to as "re-aging."

3. All of the statements and opinions contained within this Declaration are true and correct to the best of my knowledge.

4. I have worked in the credit industry since 1991, including full-time employment with Equifax Incorporated, Fair Isaac Corporation (aka, FICO), and Credit.com, and subsequent contract work for dozens of other credit related entities including VantageScore Solutions, which is the intellectual property owner of the VantageScore credit scoring models.

5. I have been self-employed by The Ulzheimer Group, LLC since 2004. During that time I've written four books about credit, been published and interviewed thousands of times on the topic of consumer credit, and have served as an expert witness in credit related lawsuits over 625 times. I've provided sworn testimony over 100 times in deposition, trial, and arbitration settings.

6. As part of my retention in Macajoux v ARS (also spelled "Macaajoux" in the Complaint), I have been asked to provide a thorough explanation of re-aging, to include the actual recognized definition of the term and how it is being incorrectly defined by Plaintiff.

7. In her Complaint, Plaintiff contends she has "seven tradelines from Debt Collector" ARS. For clarity, debt collectors do not furnish "tradelines" to the credit reporting agencies. Debt collectors, like ARS, furnish collection segments or collection accounts to the credit reporting agencies. Nonetheless, Plaintiff contends she has seven entries from ARS on her credit reports. (Complaint at 9)

8. All seven of Plaintiff's collection accounts stem from unpaid medical services incurred to Inphynet S Broward, LLC. (See Plaintiff's Response to ARS's Request for Production of Documents)

9. Plaintiff contends ARS credit reported or "furnished" incorrect "Service Dates" to the credit reporting agencies and this constitutes "re-aging." (Complaint at 11-12, 14)

10. Plaintiff contends the service dates ARS furnished to the credit reporting agencies are more recent than the actual service dates with Inphynet S Broward, LLC. (Complaint at 11-12, 14)

11. Plaintiff's use of the term "re-aging" is incorrect. ARS did not re-age the Plaintiff's seven collection accounts.

12. Debt collectors are required to provide a Metro 2 Date of First Delinquency ("DoFD") along with their collection accounts when reported to the credit reporting agencies.

13. Metro 2 is the credit reporting language and set of standards used by some 14,000 companies that furnish information to the credit reporting agencies.

14. In Metro 2, the DoFD represents the date an account first went delinquent and then progressed into default, without curing or being paid to current in the interim.

15. The DoFD is used by the credit reporting agencies as the anchor date from which the 7-year credit reporting clock begins to run. Once a collection account ages 7 years, from the DoFD, the credit reporting agencies are required by the Fair Credit Reporting Act ("FCRA") to remove it from the consumer's credit reports.

16. Re-aging occurs when a debt collector provides a DoFD to the credit reporting agencies that is more contemporary/recent than the date an account first went delinquent and then progressed into default, without curing or being paid current in the interim.

17. The above is the one and only accurate definition of re-aging. There is no other accurate definition of the term.

18. This definition of re-aging is shared (and has been published) by the Federal Trade Commission, the National Consumer Law Center, Consumers Union, and the Consumer Financial Protection Bureau. None of these organizations would ever be confused as representing the interests of collection agencies over those of consumers.

19. ARS, as are all 3rd party debt collectors, is required to report a Metro 2 "Date Opened" to the credit reporting agencies with all furnished collection accounts.

20. In Metro 2, the Date Opened represents the date a debt was assigned by a creditor/service provider to a debt collector. As in, it is the date the collection account was "opened" because the debt had just been assigned to a debt collector.

21. The Date Opened is not the DoFD. The two dates are entirely different Metro 2 fields that do not have the same meaning or representation on a consumer credit report.

22. The Date Opened is not used by the credit bureaus as the anchor date from which the 7-year credit reporting clock begins to run. That is the DoFD.

23. The Date Opened also does not represent, nor is it meant to represent, medical service dates.

24. The Date Opened appearing on Plaintiff's credit reports will <u>always</u> be more recent than Plaintiff's dates of service because the medical services received by Plaintiff had not yet gone into default as of the service date and, thus, had not necessitated an assignment to a debt collector and, thus, the "opening" of a collection account. (See Plaintiff's Response to ARS's Request for Production of Documents)

25. Additionally, there is no such "service date" in Metro 2 and no such "service date" on any consumer's credit reports, including Plaintiff's credit reports. (See Plaintiff's Response to ARS's Request for Production of Documents)

26. Plaintiff is confusing the Date Opened from her credit report (the dates her defaulted medical debts were assigned to ARS) with her service dates (the dates she received medical services) and labeling that confusion "re-aging." (See Plaintiff's Response to ARS's Request for Production of Documents)

27. Accordingly, the assertion in the Complaint at paragraph 14 that Plaintiff's credit score has been "artificially lowered" because of this so-called "re-aging" is also incorrect.

- 4 -
Declaration of John Ulzheimer

28. FICO's scoring models do not consider any such "service dates" when calculating scores. FICO's scores also do not consider DoFDs on collection accounts when calculating scores. FICO's scores only consider the date the collection accounts were opened (the Metro 2 "Date Opened") when calculating scores.

29. Respectfully, unless the Plaintiff has extensive experience with credit scoring systems and how they interpret standard aggregation variables from Metro 2 formatted credit reports, the Plaintiff cannot know what impact, if any, any particular item would have on her FICO credit scores. As such, any contention as to the impact on Plaintiff's FICO scores of anything on her credit reports is speculative.

30. I declare under penalties of perjury under the laws of the United States, 28 U.S.C. Section 1746, that the foregoing is true and correct to the best of my knowledge.

Dated: January 26, 2023



_____
John Ulzheimer